Exhibit B

Westlaw.

2005 WL 1649041
--- F.3d ---
(Cite as: 2005 WL 1649041 (2nd Cir.(N.Y.)))

Page 1

**H**
Only the Westlaw citation is currently available.

United States Court of Appeals,
Second Circuit.
In re: WTC DISASTER SITE
Vincent MCNALLY, Gina McNally, Francis Lavery,
Kathryn Lavery, Joseph Ariola,
Colleen Ariola, James Blake, John M Deneau, Lisa
Deneau, Joseph Healy, Janet
Healy, George Lamoreaux, Ingrid Lamoreaux,
Thomas Magee, Patrick Malloy, Lori
Malloy, Jon J McGillick, Arlene McGillick, Michael
Spiller, Leah Spiller,
Timothy Villari, Maria Villari, Anthony R Larosa,
Angela Larosa, Roger Danvers,
James Mascarella, John F Taggart, and Theresa
Taggart, Plaintiffs-Appellees-
Cross-Appellants,
David HENDRICKSON, Lynn Hendrickson,
Dewardranth Samaroo, Teresa Hartey, Edward
Galanek, Robert Esposito, Denise Esposito, James
Melendez, Maureen McCue,
Joseph Berardi, John Baiano, Jack Biggs, John
Bonvicino, John Bou, Kevin
Brannick, Wayne Brown, Robert Carannante, Victor
Carpentier, Alan Ceserano,
Michael Conlon, Phyliss Costarella, Gerald Damitz,
Anthony Delbianco, Lenny
Dinotte, Daniel Donovan, Roy Edwards, Joseph
Falcone, Nelson Garcia, Anthony
Giordano, Robert Goffredo, Michael Guidicipietro,
Rafael Gutierrez, Otto Havel
III, Robert Henri, Pelops Irby, Austin Johnson, Jason
Keenan, Kevin Kempton,
Omar Malave, Daniel Maldonado, John Menoni,
Martin Mullaney, Mickey Nardiello,
Frank Ozello, John Pankey, Nicholas Parascandola,
Vincent Parise, Thomas Perry,
Jerry Pizzarello, Juan Rullan, Raymond Russo, John
Salomone, George Snyder,
Alexis Solomon, Christian Trembone, Clinton Beyer,
Joan Beyer, Peter Blake,
Sharon Blake, and Jason Maksimowich, Plaintiffs-
Appellees [FN*],
v.
THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY and THE CITY OF NEW YORK,
Defendants-Appellants-Cross-Appellees,
WORLD TRADE CENTER PROPERTIES LLC,

sued as Silverstein Properties, Defendant-
Appellant.
No. 03-7698(L), 03-7736, 03-7699, 03-7700, 03-
7724, 03-7743, 03-7749, 03-7756,
03-7757, 03-7758, 03-7760, 03-7761, 03-7778, 03-
7784, 03-7785, 03-7786, 03-
7789, 03-9163, 03-9165, 03-9167, 03-9173, 03-9175,
03-9177, 03-9183, 03-9187,
03-9193, 03-9195.

Argued: Jan. 13, 2005.
Decided: July 14, 2005.

**Background:** Workers involved in rescue and
cleanup activities after terrorists crashed two hijacked
airplanes into office buildings brought state-court
actions against city, port authority, and lessee of
office complex, seeking damages for respiratory
injuries allegedly caused by failure to provide
protective equipment as required by New York law.
After actions were removed, certain workers moved
to remand. The United States District Court for the
Southern District of New York, Alvin K. Hellerstein,
J., 270 F.Supp.2d 357, granted in part and denied in
part motions for remand. Parties cross-appealed, and
actions were consolidated for purposes of appeal.

**Holdings:** The Court of Appeals, Kearse, Circuit
Judge, held that:
(1) order remanding removed actions fell within
statutory prohibition against appellate review of
remand orders premised on lack of subject matter
jurisdiction, and
(2) Air Transportation Safety and System
Stabilization Act (ATSSSA) preempted workers'
state-law claims for respiratory injuries.
Affirmed in part; appeals dismissed in part.

**[1] Removal of Cases** 🔑0

334k0 k.
Removal statute does not bar review of remands not
based on a defect in the procedure used for removal
or on the absence of subject matter jurisdiction. 28
U.S.C.A. § 1447(d).

**[2] Removal of Cases** 🔑0
334k0 k.
If remand of removed action was premised on a flaw
encompassed by removal statute, such as a defect in
the removal procedure or the absence of subject

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

matter jurisdiction, statute makes the remand unreviewable, either through appeal or by writ of mandamus. 28 U.S.C.A. § 1447(c, d).

**[3] Removal of Cases** 🔗0
334k0 k.
Even when district court does not specify whether remand of removed action is pursuant to statute governing remand based on procedural defect or lack of subject matter jurisdiction or under another statute, order is not reviewable on appeal if Court of Appeals construes remand to have been based on a perceived lack of subject matter jurisdiction. 28 U.S.C.A. § 1447(c, d).

**[4] Removal of Cases** 🔗0
334k0 k.
Statute that makes remand of removed action based on lack of subject matter jurisdiction not reviewable on appeal or otherwise encompasses attempts to appeal by means of certification and discretionary interlocutory appeal. 28 U.S.C.A. § 1292(b), 1447(c, d).

**[5] Removal of Cases** 🔗0
334k0 k.
Order that remanded removed state-court actions in which workers involved in rescue and cleanup efforts following attacks in which terrorists crashed hijacked airplanes into office buildings sought damages for alleged respiratory injuries rested on lack of federal question jurisdiction, in that it depended upon district court's interpretation of preemptive scope of Air Transportation Safety and System Stabilization Act (ATSSSA), and thus fell within statutory bar against appellate review of remand orders premised on lack of subject matter jurisdiction, necessitating dismissal of appeals from order notwithstanding district court's certification of remand issue for interlocutory appeal. 28 U.S.C.A. § § 1291, 1292(b), 1447(c, d); 49 U.S.C.A. § 40101 note.

**[6] Removal of Cases** 🔗0
334k0 k.
Collateral order doctrine did not apply to permit appellate review, notwithstanding statutory bar against review of remand orders premised on lack of subject matter jurisdiction, of order that remanded removed state-court actions in which workers involved in rescue and cleanup activities following terrorist-related airplane crashes sought damages for alleged respiratory injuries, in that fact that order conclusively determined that state court would decide merits of underlying dispute was true for all cases

remanded due to improper removal or lack of jurisdiction. 28 U.S.C.A. § § 1291, 1447(d).

**[7] Removal of Cases** 🔗0
334k0 k.
District court did not undertake to decide any merits questions independently of its need to determine whether it had subject matter jurisdiction over removed actions in which workers involved in rescue and cleanup activities following terrorist attack sought damages for alleged respiratory injuries, but rather touched on liability cap under Air Transportation Safety and System Stabilization Act (ATSSSA) in analyzing extent of ATSSSA's preemptive effect, and therefore court's exploration of ATSSSA did not create independent basis for appellate review of remand order, which otherwise was barred by statute precluding appellate review of remand orders premised on lack of jurisdiction. 28 U.S.C.A. 1447(d); 49 U.S.C.A. § 40101 note.

**[8] Removal of Cases** 🔗0
334k0 k.
Order remanding removed state-court actions in which workers involved in rescue and cleanup activities following terrorist-related airplane crashes sought damages for alleged respiratory injuries, which fell within statutory bar against appellate review of remand orders premised on lack of subject matter jurisdiction, could not be reviewed on appeal, pursuant to interlocutory appeal statute, under theory that it involved novel or important jurisdictional questions. 28 U.S.C.A. § § 1292(b), 1447(c, d).

**[9] Federal Courts** 🔗0
170Bk0 k.
Grant of permission to bring interlocutory appeal by motion panel of Court of Appeals was subject to review by the merits panel and could be vacated if permission was granted improvidently.

**[10] States** 🔗0
360k0 k.
Question of whether federal law preempts state law is fundamentally a matter of Congress's intent.

**[11] States** 🔗0
360k0 k.
Since the existence of preemption turns on Congress's intent, court analyzing preemption question is to begin as it does in any exercise of statutory construction, with the text of the provision in question, and move on, as need be, to the structure and purpose of legislation in which it occurs.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[12] States** ☞0
360k0 k.
When acting within constitutional limits, Congress is empowered to preempt state law by so stating in express terms. U.S.C.A. Const. Art. 6, cl. 2.

**[13] States** ☞0
360k0 k.
In the absence of express preemptive language, Congress's intent to preempt all state law in a particular area may be inferred when the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation. U.S.C.A. Const. Art. 6, cl. 2.

**[14] States** ☞0
360k0 k.
Federal preemption of a whole field of law will be inferred when the field is one in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. U.S.C.A. Const. Art. 6, cl. 2.

**[15] States** ☞0
360k0 k.
Even when Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law, and such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. U.S.C.A. Const. Art. 6, cl. 2.

**[16] States** ☞0
360k0 k.
If statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.

**[17] States** ☞0
360k0 k.
When the language of statute plainly indicates that Congress intended preemption of state law, court must give effect to statute's plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning.

**[18] States** ☞0

360k0 k.
If the text of statute is ambiguous, either as to Congress's intent to preempt at all or as to the extent of an intended preemption of state law, the meaning of the statute may be gleaned from its context and from the statutory scheme as a whole, or by resort to the normal canons of construction and legislative history.

**[19] Removal of Cases** ☞0
334k0 k.
When federal statute completely preempts state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law for removal purposes.

**[20] Removal of Cases** ☞0
334k0 k.
Although federal preemption is ordinarily a federal defense to action, and as such does not authorize removal, complete preemption warrants removal because claims within the preempted area of law are necessarily federal in character.

**[21] Removal of Cases** ☞0
334k0 k.
When Congress has clearly manifested an intent to make causes of action removable to federal court, the federal courts must honor that intent.

**[22] States** ☞0
360k0 k.
Air Transportation Safety and System Stabilization Act (ATSSSA) preempted state-law claims brought by workers involved in rescue and cleanup activities following terrorist-related aircraft crashes to recover damages for respiratory injuries allegedly caused by exposure to toxic substances as a result of crashes and lack of adequate protective equipment; provisions establishing exclusive federal remedy bespoke intent to displace state-law remedies entirely for such damages claims, and provision granting to specific district court exclusive jurisdiction over all actions bringing any claim resulting from or relating to crashes had to be interpreted as authorizing removal of affected state actions to federal court. 49 U.S.C.A. § 40101 note; McKinney's Labor Law § § 200(1), 241(6).

**[23] States** ☞0
360k0 k.
Air Transportation Safety and System Stabilization Act (ATSSSA), which creates federal cause of action

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1649041                                                    Page 4
--- F.3d ---
**(Cite as: 2005 WL 1649041 (2nd Cir.(N.Y.)))**

for damages arising out of terrorist-related aircraft crashes does not displace state substantive standards governing liability, but rather preempts only state-law damages remedies. 49 U.S.C.A. § 40101 note.

**[24] Removal of Cases** 0
334k0 k.
When remand order has not been implemented and case has not actually been returned to state court, district court has the authority, as with any interlocutory order, to revise its order at any time before the entry of final judgment and to reconsider the remand to state court in light of opinion issued on appellate review. Fed.Rules Civ.Proc.Rule 54(b), 28 U.S.C.A.

West Codenotes
Limited on Preemption Grounds

McKinney's Labor Law §§ 200(1), 241(6)

Appeals by defendants from so much of an order of the United States District Court for the Southern District of New York, Alvin K. Hellerstein, Judge, as ordered the remand of certain actions to state court; cross-appeals by certain plaintiffs from so much of the district court's order as denied motions to remand. See 270 F.Supp.2d 357 (2003).

The appeals, challenging the grant of remands, are dismissed for lack of appellate jurisdiction; on the cross-appeals, challenging the denial of remands, we affirm.

Stephen C. Glasser, New York, New York (Brian J. Shoot, Paul A. Marber, Sullivan Papain Block McGrath & Cannavo, New York, New York, on the brief), for Plaintiffs-Appellees-Cross-Appellants.

Ryan S. Goldstein, New York, New York, and Wertheimer Associates, New York, New York (Robin Wertheimer, New York, New York, of counsel), for most of the remaining Plaintiffs-Appellees, joined in the brief submitted on behalf of Plaintiffs-Appellees-Cross-Appellants.

Richard A. Williamson, New York, New York (M. Bradford Stein, James B. Eisenberg, Christina M. Rackett-Solis, Flemming, Zulack & Williamson, New York, New York, on the brief), for Defendant-Appellant-Cross-Appellee The Port Authority of New York and New Jersey and Defendant-Appellant World Trade Center Properties.

James E. Tyrrell, Jr., Latham & Watkins, Newark, New Jersey (Michael A. Cardozo, Corporation

Counsel of the City of New York, Kenneth A. Becker, Matthew J. Maiorana, New York, New York, on the brief), for Defendant-Appellant-Cross-Appellee The City of New York.

Before: KEARSE and CABRANES, Circuit Judges, and KORMAN, Chief District Judge [FN**].

KEARSE, Circuit J.

*1 The present appeals raise questions as to federal-court jurisdiction over claims relating to respiratory injuries suffered by rescue and clean-up workers as a result of exposure to toxins and other contaminants in the aftermath of terrorists' hijacking of two airplanes and using them to cause the destruction of the New York City World Trade Center's twin 110-story towers on September 11, 2001. Plaintiffs in the present actions, which have been consolidated for purposes of these appeals, originally asserted such claims under New York State law in New York State Supreme Court against defendants City of New York (the "City"), Port Authority of New York and New Jersey (the "Port Authority"), owner and operator of the World Trade Center complex, and/or World Trade Center Properties LLC ("WTC Properties"), lessee of the complex. Defendants removed the actions to the United States District Court for the Southern District of New York, contending that the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA" or the "Act"), Pub.L. No. 107-42, 115 Stat. 230 (2001)(codified as amended at 49 U.S.C. § 40101 note), which creates a federal cause of action over which the federal court has exclusive jurisdiction, preempts plaintiffs' state-law claims.

On motions by some of the plaintiffs to remand their cases to state court, the district court, Alvin K. Hellerstein, Judge, granted remands in some actions and denied remands in others. The court ordered remands with respect to all actions in which the plaintiffs allege that exposure occurred only after September 29, 2001, or only at locations other than the World Trade Center site, ruling that it lacks subject matter jurisdiction over those actions. The court denied the motions to remand actions that allege at least some exposure at the World Trade Center site on or before September 29, 2001, holding that, under ATSSSA, the federal court has exclusive jurisdiction over such claims and that the court would exercise supplemental jurisdiction over other claims asserted in those actions.

On appeal, defendants challenge so much of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

district court's decision as ordered the remand of actions that assert post-September-29 claims or non-World-Trade-Center-site claims, pursuing their contentions that ATSSSA preempts plaintiffs' state-law claims and gives the district court exclusive jurisdiction over the ATSSSA-created claims, and contending that the district court's use of September 29 as a cutoff date is artificial and finds no basis in the Act. Certain plaintiffs have cross-appealed from so much of the order as denied their motions to remand, arguing that the Act does not preempt their claims. In addition, plaintiffs contend that this Court lacks jurisdiction to entertain defendants' appeals. For the reasons that follow, we agree with plaintiffs that we lack jurisdiction to entertain the appeals by defendants from the granting of the remands; as to the cross-appeals from so much of the district court's order as denied motions to remand, we affirm, concluding that ATSSSA preempts plaintiffs' state-law claims.

## I. BACKGROUND

*2 The September 11 events leading to the present lawsuits, along with the terrorists' hijacking of two additional airplanes to attack other United States targets--one crashing into the Pentagon and the other crashing in Shanksville, Pennsylvania--are described in greater detail in the district court's Opinion and Order Partially Granting and Partially Denying Motions To Remand Cases to State Court, dated June 20, 2003, see *In re World Trade Center Disaster Site Litigation,* 270 F.Supp.2d 357, familiarity with which is assumed. Most of the events are not disputed.

*A. Conditions at the World Trade Center Disaster Site*

Less than two hours after terrorists flew two airplanes, carrying tens of thousands of gallons of jet fuel, into the World Trade Center's twin towers, both towers collapsed, trapping and killing thousands of people. Fires caused by exploding jet fuel destroyed or damaged adjacent buildings as well. Immediately, pursuant to state statutes and declarations of a state of emergency, the City took control of the World Trade Center site ("WTC site" or "disaster site"). Police officers and firefighters, soon to be joined by sanitation workers, construction workers, and others, engaged in the instant search for survivors. No survivors were found after September 12, 2001.

On September 29, 2001, then-Mayor Rudolph Giuliani announced that the search for survivors was at an end. From that point on, the workers principally searched for human remains and evidence and

engaged in a massive demolition and debris-removal process. Debris from the site was moved, principally by Department of Sanitation workers, to various marine transfer stations in Manhattan and Brooklyn, was loaded onto barges, and was taken to the Fresh Kills Landfill on Staten Island. At Fresh Kills, the debris was off-loaded and was searched by law enforcement personnel before disposal. The debris-removal operation at the disaster site, involving more than 1 1/2 million tons of rubble, was not substantially completed until May 2002. The City returned control over the World Trade Center site to the Port Authority in July 2002.

The compressive force of the towers' collapsing upon themselves had crushed such building components as concrete, glass, steel, and fire-proofing material, as well as interior furniture and equipment, causing clouds of dust and mountains of debris. The City's air sampling at the disaster site revealed particulate matter consisting principally of pulverized building materials and contaminants such as asbestos, volatile organic compounds, dioxins, PCBs, and heavy metals. Further, fires at the site burned underground for more than three months and smoldered for another month; they--and the above-ground fires-- produced a pall of acrid smoke over Manhattan and Brooklyn. As early as September 12, the City was asked to provide respirators for workers at the disaster site. The numbers requested, however, far exceeded the numbers the City could supply.

*B. The Present Lawsuits and Their Removal to Federal Court*

*3 In these lawsuits, the plaintiffs include firefighters and police officers who worked at the WTC site searching for survivors and human remains; ironworkers, construction workers, and laborers called upon to deal with building fragments; operating engineers employed to do demolition work; Department of Sanitation workers who transported debris to marine transfer points or to the Fresh Kills Landfill and/or who worked at the landfill; and police officers who worked at the landfill. Plaintiffs commenced their actions in state court against the City, the Port Authority, and/or WTC Properties, alleging that in the course of the employment of plaintiffs (or their spouses) in the rescue or clean-up operation at the disaster site, at the marine transfer points, or at the landfill, plaintiffs (or their spouses) were exposed to toxic fumes and gases and other hazardous conditions, and that they suffered respiratory injuries due to the failure of the City and the Port Authority to monitor those conditions and to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provide them with adequate safety equipment, and/or to warn them of the hazards. Plaintiffs brought their claims principally under New York State labor laws which require, *inter alia,* that employers provide their employees with safe working environments. *See, e.g.,* N.Y. Lab. Law § 200(1) (McKinney 2002) ("All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places."); *id.* § 241(6) ("All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.").

The City and/or the Port Authority removed the cases to the district court pursuant to 28 U.S.C. § 1441, asserting that ATSSSA creates a federal cause of action for these plaintiffs, preempts the state-law claims that plaintiffs have asserted, and gives the District Court for the Southern District of New York exclusive jurisdiction over the ATSSSA claims. Disputing these contentions, some of the plaintiffs moved to remand their cases to state court. At the time of the district court's decision of the remand motions, there were some 35 removed actions, involving more than 1,200 plaintiffs.

### C. The Decision of the District Court

In its opinion reported at 270 F.Supp.2d 357, the district court granted the remand motions in some cases and denied the motions in others. The court noted that ATSSSA was enacted on September 22, 2001, in order to establish a scheme for compensating victims of the September 11 attacks, in part by providing for relief through a Victim Compensation Fund (or the "Fund") as an alternative to relief through lawsuits, while limiting the liability of the involved airlines in order to preserve the financial stability of the airline industry. The court further noted that the Act was amended in November 2001 to, *inter alia,* expand the entities to which the limitation of liability applied and that, as amended, § 408(a) of the Act also provides for limitations of aggregate liability on the part of the City and the Port Authority. *See* 270 F.Supp.2d at 360, 362.

*4 The district court noted that, in addition to establishing the Fund, ATSSSA provides a federal cause of action " 'for damages arising out of the

hijacking and subsequent crashes," ' and provides "that all claims 'resulting from or relating to' th[ ]e crashes [of the four flights hijacked on September 11] are to be brought exclusively in the United States District Court for the Southern District of New York," *id.* at 360 (quoting ATSSSA § 408(b)). The court stated that these provisions signified Congress's intent that ATSSSA preempt at least some claims that would otherwise be brought under state law:

> By providing for exclusive federal jurisdiction and a federal cause of action, Congress clearly intended that the claims for injuries "arising out of," "resulting from," or "relating to" the terrorist-related aircraft crashes into the World Trade Center would be federal claims brought only in the United States District Court for the Southern District of New York, preempting the state courts of jurisdiction.

270 F.Supp.2d at 368.

The district court stated, however, that "Congress was not clear ... as to the scope of protection that it intended to give to the City," *id.* at 371, and it noted that there is a "presumption that Congress does not intend to displace state law, especially in traditional areas of state control," *id.* at 367 (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645, 654-55, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). Thus, a "difficult question" was presented as to

> the scope of preemption created by section 408(b)(3) of the Act. Should preemption extend to lawsuits by clean-up and demolition workers who worked at the World Trade Center site months after September 11, 2001? Should preemption extend to claims by Department of Sanitation workers at the Fresh Kills, Staten Island dump site, or at the piers and barges that were used to transport the debris to Fresh Kills? Is there some temporal and geographical limitation, dividing claims between those more immediately, and more distantly, affected by the terrorist-related aircraft crashes of September 11, 2001?

270 F.Supp.2d at 368. Quoting ATSSSA, the court stated that

> [t]he varied phrases of the Act providing for the federal cause of action and granting exclusive federal jurisdiction--"arising out of," "resulting from" and "relating to"--suggest varying meaning and scope, more limited in the context of the phrase "resulting from," more expansive in the context of the phrase "relating to," and perhaps somewhere between in the context of the phrase "arising out of."

*Id.* at 369. The court stated, however, that these

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1649041                                                    Page 7
--- F.3d ---
(Cite as: 2005 WL 1649041 (2nd Cir.(N.Y.)))

phrases ... shed little light on the scope of federal preemption. As recognized by the Supreme Court, a phrase such as "relate to" could be "taken to extend to the furthest stretch of its indeterminacy," and "for all practical purposes preemption would never run its course, for '[r]eally, universally, relations stop nowhere.' ' .... To do so "would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality."

*5 *Id.* (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. at 655, which dealt with 29 U.S.C. § 1144(a), *i.e.*, § 514(a) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA")).

The district court reasoned that, "absent some clearly expressed directive," the "concerns of federalism--the proper balance between federal and state interests--strongly weigh against imputing a congressional intent to displace [the] whole panoply of state law[s]," 270 F.Supp.2d at 374 (internal quotation marks omitted), that "regulate the health and safety of the workplace," *id.* at 378. The court concluded that, despite ATSSSA's broad reference to claims "*relating to* the terrorist-related aircraft crashes of September 11, 2001," ATSSSA § 408(b)(3) (emphasis added), "Congress could not have intended for every claim, no matter how distant from the attacks, to be brought into federal court, displacing strong and historic state interests and the traditional role of the state judiciary," 270 F.Supp.2d at 372. Rather, the scope of preemption should be limited to causes that are not " 'too tenuous, remote or peripheral' from [the targeted] federal concerns." *Id.* at 374 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

Having noted that ATSSSA was meant "to protect the airlines and other defendants against the potential of extraordinary liability arising from the September 11 aircraft crashes, while preserving also the right of victims to claim compensation, either from a Victim Compensation Fund or through the normal course of litigation," 270 F.Supp.2d at 370, the court stated that [t]he Act and its legislative history show ... that the interest of Congress was focused on claims of those immediately involved in the terrorist-related aircraft crashes and the tasks following in their immediate aftermath, like the firefighters and police officers who were involved in the attempts to rescue victims. The activities of those who followed, like ironworkers, sanitation workers,

engineers, and the numerous other laborers who participated in the lengthy demolition and clean-up efforts, did not appear to have been considered by Congress. The legislative history does not support an understanding that all claims against the City and the Port Authority should be preempted, covered by the cap on aggregate liability. The language of section 408(b)(3) is broad, but not boundless.
270 F.Supp.2d at 378 (footnote omitted).

In finding that the scope of federal preemption was limited, the district court relied in part on language used by Congress to make relief from the Fund and relief through a court suit (other than a suit against terrorists or against insurers on collateral source obligations) mutually exclusive alternatives. The court pointed out that
[i]f the claimant chose to file with the Fund, that filing operated as a waiver of the right to file a civil action "in any Federal *or State* court for damages as a result of the terrorist-related aircraft crashes of September 11, 2001."
*6 270 F.Supp.2d at 374-75 (quoting ATSSSA § § 405(c)(3)(B), 408(a)(3)) (emphasis ours). The court reasoned that the inclusion of reference to a "State court" alternative that would be foreclosed by filing a claim with the Fund "suggests that Congress intended that state courts not be pre-empted." 270 F.Supp.2d at 375 n. 10.

The court also was not persuaded that "the expressed congressional purpose to promote litigation efficiency and consistency of judgments by concentrating all lawsuits exclusively in the United States District Court for the Southern District of New York" would be furthered by having ATSSSA encompass the present actions, given that the variations in state-law accrual dates applicable to claims of exposure to toxic substances would cause the applicable statute of limitations to run at different times for different claimants. *See id.* at 378-79. The court noted that it had ruled in other cases that "common workplace injuries in the demolition and clean-up efforts at the World Trade Center did not cease to be governed by traditional state law, and should be decided in the traditional state court, the New York Supreme Court." *Id.* at 373.

Having concluded that ATSSSA was not meant to preempt all claims of injury related to the WTC disaster, the court reasoned that Congress intended limitations that were temporal and geographical. The court inferred that the appropriate geographic limitation was the World Trade Center

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1649041
--- F.3d ---
(Cite as: 2005 WL 1649041 (2nd Cir.(N.Y.)))

disaster site and that the logical temporal limitation was September 29, the date on which the search explicitly for survivors was given up and the operation became a search for human remains and the removal of debris.

On September 29, 2001, the City recognized that there could be no more survivors, and the hope and specific search for survivors officially ceased. The dominating goal of the contractors and workers at the site and elsewhere became demolition and clean-up. *I hold that September 29, 2001 is a proper demarcation point and the World Trade Center site is a proper geographical limitation for considering federal jurisdiction, and that up to that date, injuries that were suffered at the World Trade Center arose out of, resulted from and were related to the terrorist-related aircraft crashes.* After that point, or outside the World Trade Center site, the goals of demolition, clean-up and removal of debris were dominant, the traditional state interest in regulating the health and safety of employees in the work place re-emerged, and any federal interest in displacing traditional state police powers waned. Accordingly, *claims arising out of demolition, clean-up, and removal activities after September 29, 2001 became too tenuous, remote or peripheral from federal concerns to warrant a finding that the law arises out of, results from, or relates to the September 11 terrorist-related aircraft crashes.* 270 F.Supp.2d at 374 (internal quotation marks omitted) (emphases added). The court concluded that these lines of demarcation would as to preemption would

*7 give[ ] appropriate weight to the two policies expressed in the statute--one being the policy of providing victims of September 11 the choice of compensation from the fund or a suit in federal court, and the other being the policy of creating a broader federal cause of action and extending liability caps to the non-terrorist defendants in September 11-related litigation.

*Id.* at 375.

In sum, the court ruled that ATSSSA preemption does not extend to claims of respiratory injuries suffered only at sites other than the World Trade Center or suffered only after September 29, 2001, and that the court therefore lacks subject matter jurisdiction over those claims; it accordingly granted the motions to remand cases in which only those categories of claims are alleged. The court denied the motions to remand cases in which the complaints allege respiratory injuries suffered at the WTC site on or before September 29, 2001.

The court also noted that in some of the removed

cases, the plaintiffs had not moved to remand. It *sua sponte* extended its rulings on ATSSSA jurisdiction to those cases, ordering remands in the actions whose complaints allege respiratory injuries suffered only at sites other than the World Trade Center or only after September 29, 2001.

Finally, the court identified more than a dozen cases in which the date and/or situs of the alleged injuries could not be discerned from the faces of the complaints. The court concluded that further proceedings were required before those cases could be placed in the remand or the nonremand category.

**D. *The Present Appeals and Cross-Appeals***

In response to a request by the Port Authority, the district court entered an order certifying its decision for an immediate interlocutory appeal under 28 U.S.C. § 1292(b), finding that its ruling as to "[t]he scope of federal jurisdiction" conferred by ATSSSA "involves a controlling question of law as to which there is substantial ground for difference of opinion" and that an "immediate appeal also may materially advance the ultimate termination of the litigation," 270 F.Supp.2d at 381. The court stated: "This is an unusual case. If my order is incorrect, and preemption and the scope of federal jurisdiction are more extensive or more limited than I have held, the legitimacy of further proceedings in the New York Supreme Court and in this court will be in doubt." *Id.*

The court noted, however, that an appeal would not be available in a case after it had been sent back to state court, *see id.* ("certifications are available only with respect to cases remaining in this court"), and the court therefore stayed the actual return of the to-be-remanded cases to state court pending appeal. Accordingly, the removed cases (to the extent that they have not since been dismissed or withdrawn) remain pending in the district court.

In accordance with § 1292(b), the City and the Port Authority moved in this Court for permission to appeal so much of the district court's decision as granted remands, and some of the plaintiffs whose remand motions had been denied moved for leave to appeal those denials. A motions panel of this Court unconditionally granted the moving plaintiffs' application for permission to appeal the denial of their remand motions; the panel provisionally granted defendants' motions for permission to appeal the ordered remands, "leav[ing] to the merits panel ... the question of whether these remand orders are appealable at all." *In re WTC Disaster Site*, Nos. 03-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1649041                                            Page 9
--- F.3d ---
(Cite as: 2005 WL 1649041 (2nd Cir.(N.Y.)))

8023, etc. (2d Cir. Nov. 12, 2003).

*8 For the reasons that follow, we conclude that, although we disagree with so much of the district court's decision as ordered remands to state court, that portion of the decision is unreviewable, and we thus lack jurisdiction over defendants' appeals. However, the district court, having stayed the remands, is free to revisit that portion of its decision. As to the cross-appeals, of which we unquestionably have jurisdiction, we affirm so much of the district court's order as denied remands.

## II. DEFENDANTS' APPEALS: APPELLATE JURISDICTION

Defendants argue that the district court's order for remands is appealable either under 28 U.S.C. § 1291, which permits appeals from final judgments and from final determinations fitting within the collateral order doctrine, or under § 1292(b), which provides a framework for interlocutory appeals from some nonfinal orders. None of the authorities on which defendants rely, however, supports the proposition that an appeal may be entertained under either of those sections, or by any other means, from an order of the district court that remands an action of the type asserted here to state court on the ground of lack of subject matter jurisdiction.

Section 1447 of Title 28 of the United States Code governs procedures in cases that have been removed to the district court from a state court. Subsection (c) of § 1447 provides in pertinent part as follows:
  A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.
28 U.S.C. § 1447(c). Subsection (d) of § 1447 provides that, except in certain civil rights cases, "[a]n order remanding a case to the State court from which it was removed *is not reviewable on appeal or otherwise ....*" Id. § 1447(d) (emphasis added).

[1] Despite § 1447(d)'s facial breadth, the Supreme Court has made clear that " 'only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)," ' Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 127, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) ("Things Remembered ")); see, e.g., Thermtron Products, Inc. v. Hermansdorfer,

423 U.S. 336, 345-46, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976) ( "Thermtron "), abrogated on other grounds by Quackenbush, 517 U.S. at 715. Thus, review of remands not based on a defect in the procedure used for removal or on the absence of subject matter jurisdiction is not barred by § 1447(d). See, e.g., Quackenbush, 517 U.S. at 715 (remand based on abstention was appealable under § 1291 as a final collateral order); Thermtron, 423 U.S. at 344-45 (remand premised on the district court's crowded docket was reviewable on petition for mandamus); Minot v. Eckardt-Minot, 13 F.3d 590, 593 (2d Cir.1994) ("Minot ") (remand based on abstention was appealable as a final collateral order); Clorox Co. v. United States District Court for the Northern District of California, 779 F.2d 517, 520 (9th Cir.1985) (same re remand based on a theory of contractual waiver of the right to remove); Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 276-77 (9th Cir.1984) (same re remand based on enforcement of a forum selection clause).

*9 [2] It remains well established, however, that if the remand was premised on a flaw encompassed by § 1447(c)--i.e., a defect in the removal procedure or the absence of subject matter jurisdiction-- § 1447(d) makes the remand unreviewable, either through appeal or by writ of mandamus. In Thermtron, the Supreme Court noted that § 1447(d)
  prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not and whether review is sought by appeal or by extraordinary writ. This has been the established rule under § 1447(d) and its predecessors stretching back to 1887.... If a trial judge purports to remand a case on the ground that it was removed improvidently and without jurisdiction, his order is not subject to challenge in the court of appeals by appeal, by mandamus, or otherwise.
423 U.S. at 343 (internal quotation marks omitted); see also id. at 351 (in § 1447(d), "Congress immunized from all forms of appellate review any remand order issued on the grounds specified in § 1447(c), whether or not that order might be deemed erroneous by an appellate court").

Although these statements were not holdings in Thermtron, in which the district court's remand was based on a factor not encompassed by § 1447(c) and hence was found reviewable, see 423 U.S. at 344-45, the principle that a remand pursuant to subsection (c) is unreviewable was squarely applied in Gravitt v. Southwestern Bell Telephone Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). In Gravitt, the action had been removed to federal court on the basis

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of diversity of citizenship and had been remanded by the district court on the ground that diversity was not complete. Although the court of appeals viewed the district court's finding of incomplete diversity as erroneous and therefore granted mandamus, ordering the district court to vacate the remand order, the Supreme Court reversed the court of appeals, stating that the district court's remand on the ground of lack of diversity jurisdiction "was plainly within the bounds of § 1447(c) and hence was unreviewable by the Court of Appeals, by mandamus or otherwise." 430 U.S. at 723.

*Therntron* and *Gravitt* were decided under the 1964 version of § 1447, subsection (c) of which provided that "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case ...." 28 U.S.C. § 1447(c) (1964). This part of subsection (c) has twice been amended, although without alteration of the court's duty to remand if there appears to be an absence of subject matter jurisdiction. In 1988, the quoted portion of the 1964 version of subsection (c) was divided into two sentences; the first dealt with procedural flaws in the removal process and limited the period within which a case may be remanded for such a flaw; the second dealt with subject matter jurisdiction and retained the requirement that a remand on the jurisdictional ground be ordered at any time before final judgment. As amended in 1988, the first sentence of subsection (c) stated that "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c) (1988). *See generally* Hamilton v. Aetna Life & Casualty Co., 5 F.3d 642, 644 (2d Cir.1993) ("*Hamilton* ") (court lacks authority under this version of § 1447(c) to grant an untimely motion for remand or to remand *sua sponte* on the basis of a procedural defect more than 30 days after filing of the § 1446(a) removal notice), *cert. denied,* 510 U.S. 1130, 114 S.Ct. 1100, 127 L.Ed.2d 413 (1994). The new second sentence of subsection (c), retaining the substance of the 1964 provision, stated that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (1988). This second sentence remains unaltered in the current version of the Code. *See* 28 U.S.C. § 1447(c) (2000). The language of subsection (c)'s first sentence was further amended in 1996 to make it crystal clear that the 30-day limitation for a remand motion based on a procedural defect does not limit remands for lack of subject matter jurisdiction. The

1996 amendment replaced the phrase "any defect in removal procedure" with "any defect other than lack of subject matter jurisdiction," thus arriving at the current language. Subsection (d) of § 1447, which is to be interpreted as referring to remands within the scope of subsection (c), *see Therntron,* 423 U.S. at 343, has remained the same since 1964: Except with respect to certain removed civil rights cases, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise ...." 28 U.S.C. § 1447(d).

*10 In short, the post-1964 amendments to § 1447(c) have introduced no substantive differences in the grounds for remand; and § 1447(d), making remands on those grounds unreviewable, has remained constant. Thus, we have concluded that the principles enunciated in *Therntron* and *Gravitt* as to the review-preclusive effect of § 1447(d) have remained controlling, *see, e. g.,* Hamilton, 5 F.3d at 644; Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 125 & n. 6 (2d Cir.2003) ("*Spielman* "), especially, *see id.* at 125, given the Supreme Court's reiteration in 1995, based on *Therntron,* that, "[a]s long as a district court's remand is based on a timely raised defect in removal procedure or on lack of subject-matter jurisdiction-- the grounds for remand recognized by § 1447(c)--a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)," Things Remembered, 516 U.S. at 127-28.

[3] Accordingly, we have consistently dismissed appeals taken under § 1291 from remand decisions where the basis of the remand was a lack of subject matter jurisdiction. *See, e.g.,* Medisys Health Network, Inc. v. Local 348-S United Food & Commercial Workers, 337 F.3d 119, 124 (2d Cir.2003) ("*Medisys* "); Spielman, 332 F.3d at 130; Excimer Associates, Inc. v. LCA Vision, Inc., 292 F.3d 134, 139 (2d Cir.2002); State Farm Mutual Automobile Insurance Co. v. Baasch, 644 F.2d 94, 96 (2d Cir.1981) ("insofar as the appeal [from the remand order] challenges the court's rulings that the action was not one of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States or that, even if it were, removal was untimely, the appeal must be dismissed for want of appellate jurisdiction" (internal quotation marks omitted)). Even where "the district court did not specify whether it remanded under ... § 1447(c)" or under another statute, "[if] we construe the district court's remand to have been based on a perceived lack of subject matter jurisdiction ..., the order is not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reviewable on appeal." *Spielman,* 332 F.3d at 122 (citing 28 U.S.C. § 1447(d)).

[4] The provision in § 1447(d) that a district court's jurisdiction-based remand "is not reviewable on appeal or otherwise" encompasses attempts to appeal by means of a § 1292(b) certification and discretionary appeal. Section 1292(b) provides that

[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

*11 28 U.S.C. § 1292(b). In *In re Bear River Drainage District,* 267 F.2d 849 (10th Cir.1959) ("*Bear River* "), the Tenth Circuit reasoned that,

[w]hile the generality of § 1292(b) might seem sufficient to encompass a remand order, it does not expressly either amend or repeal § 1447(d). Repeals by implication are not favored. The intention of Congress to repeal, modify or supersede must be clear and manifest. The earlier statute, § 1447(d), applies specially to prohibit appeals from remand orders. The later statute, § 1292(b), applies generally to "a civil action" in which "an order not otherwise appealable under this section" is made. As there is no express repeal or absolute incompatibility, the presumption is that the special statute is intended to remain in force.... [B]y the enactment of § 1292(b) Congress did not intend to abandon the long established policy expressed in § 1447(d).

267 F.2d at 851 (footnotes omitted).

Other courts of appeals that have opined on the availability of review pursuant to § 1292(b) in light of the prohibition against review stated in § 1447(d) have reached the same conclusion. In *Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124 (3d Cir.1998) ("*Feidt* "), the Third Circuit overruled its motions panel's prior grant of permission for a § 1292(b) appeal of a jurisdiction-based remand order and dismissed the appeal for lack of appellate jurisdiction, stating in part as follows:

Section 1447(d) prohibits review of a particular type of district court order, namely a remand order under section 1447(c), whereas section 1292(b) is a

more general grant of appellate jurisdiction. Thus, the jurisdictional bar of section 1447(d) trumps the power to grant leave to appeal in section 1292(b).

153 F.3d at 130. *See also Krangel v. General Dynamics Corp.,* 968 F.2d 914, 915-16 (9th Cir.1992) (denying petition for leave to appeal jurisdiction-based remand order certified pursuant to § 1292(b)); *Ray v. American National Red Cross,* 921 F.2d 324, 325-26 (D.C.Cir.1990) (denying permission to appeal where the district court had certified a subject matter jurisdiction "question" under § 1292(b) and had refrained from actually entering a remand order in an attempt "to avoid the [§ 1447(d) ] prohibition against appeal from a remand order").

Although this Court has not previously issued a published opinion holding that § 1292(b) appeals are encompassed by the § 1447(d) prohibition, we have so ruled or indicated. In *In re Application of Rosenthal-Block China Corporation,* 278 F.2d 713 (2d Cir.1960), we denied a motion to stay a jurisdiction-based remand order. Our rationale was that even if a stay order is not itself within the prohibition of § 1447(d), the granting of such a stay would squarely conflict with the policy of that section, which "has been furthered not only by" appellate courts' refusals to entertain a mandamus petition or an appeal from such a remand order, "but also by their refusal ... to allow appeal under the interlocutory appeals statute, 28 U.S.C. § 1292(b), from such an order." 278 F.2d at 714 (citing *Bear River,* 267 F.2d 849). And without a written opinion, we denied a petition for leave to appeal a jurisdiction-based remand order, certified by the district court under § 1292(b) in *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 952-53 (E.D.N.Y.1992), *see* No. 92-8008 (2d Cir. May 8, 1992). *See generally Spielman,* 332 F.3d at 132 n. 4 (Newman, J., concurring) ("[a]n attempt to obtain review by certification pursuant to 28 U.S.C. § 1292(b) of a ruling remanding for lack of subject matter jurisdiction has been rejected by this Court on the authority of *Thermtron* [ in] *Ryan* "); *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 396 (5th Cir.1998) ("[T]he issue decided by the [district] court in *Ryan*--that the court lacked subject matter jurisdiction ...--was never reviewed by the Second Circuit. Because it was a remand order under 28 U.S.C. § 1447(d), the court of appeals held itself without jurisdiction to review the decision."), *cert. denied,* 526 U.S. 1034, 119 S.Ct. 1286, 143 L.Ed.2d 378 (1999).

*12 [5] In the present case, it is clear that the district court's decision whether to remand or retain, in whole

or in part, the 35 cases then pending before it hinged on its conclusion as to the existence of federal jurisdiction. *See, e.g.,* 270 F.Supp.2d at 380 ("Those plaintiffs bringing claims only for exposures after September 29, 2001 or at sites other than the World Trade Center do not fall within this court's exclusive jurisdiction and their cases will be remanded."). In deliberating on the remand motions, the court considered whether defendants had established "complete pre-emption," as a prerequisite "for federal question jurisdiction ." *Id.* at 366 (internal quotation marks omitted). In eventually deciding that remands were required in cases alleging injuries suffered only after September 29 or at locations other than the WTC site, but not in those alleging injuries suffered at that site on or before that date, the court stated, *inter alia,* that "[t]hese differences affect the nature of the claims presented to me and the jurisdictional determination I must make," *id.* at 372; it "h[e]ld that September 29, 2001 is a proper demarcation point and the World Trade Center site is a proper geographical limitation for considering federal jurisdiction," *id.* at 374; and it ultimately ruled

> that the claims of plaintiffs alleging respiratory injuries caused by exposure to contaminants in the demolition and clean-up efforts at the World Trade Center site, up to and including September 29, 2001, arise out of, result from, and are related to the terrorist-related aircraft crashes, and are governed by federal law, and are exclusively within the jurisdiction of this court pursuant to section 408 of the Act. Claims arising from exposure after September 29, 2001, or at sites other than the World Trade Center, must be remanded to the New York Supreme Court, unless an independent ground of federal jurisdiction exists.

270 F.Supp.2d at 379. *See also id.* at 380 (instructing "counsel [to] sever the cases appropriately" "where some plaintiffs are subject to federal jurisdiction and some plaintiffs are not").

And consistently with its focus on lack of subject matter jurisdiction as the basis for its remands, the district court stated its rationale for granting certification under § 1292(b) as follows:

> The scope of federal jurisdiction in these cases involves a controlling question of law as to which there is a substantial ground for difference of opinion. An immediate appeal also may materially advance the ultimate termination of the litigation, for it will resolve the basic question of jurisdiction and thereby avoid uncertainty as to the binding effect of determinations and potential duplication of proceedings.

270 F.Supp.2d at 381.

Accordingly, although the court did not, in the main body of its opinion, mention § 1447(c) *in haec verba,* it is abundantly clear that the ground of the remands was lack of subject matter jurisdiction, a matter explicitly within the scope of § 1447(c). And indeed, as to a number of cases whose claims were not entirely clear in terms of temporal or geographic scope, the court stated that "[f]urther proceedings are necessary to determine if *they also* should be remanded pursuant to 28 U.S.C. § 1447(c)." 270 F.Supp .2d at 380 (emphases added). We thus view the district court's order for remands as falling squarely within § 1447(d)'s prohibition against appellate review.

***13** [6] In support of their contention that, notwithstanding § 1447(d), the remands ordered here should be appealable as final collateral orders pursuant to § 1291 because they "conclusively determine[ ] that a state court would decide the merits of the underlying dispute" (Port Authority and WTC Properties brief on appeal at 7 (internal quotation marks omitted); *see* City brief on appeal at 2), defendants rely principally on language in this Court's decision in *Minot,* 13 F.3d at 593, and the Fourth Circuit's decision in *In re CSX Transportation, Inc.,* 151 F.3d 164, 167 (4th Cir.) ("*In re CSX* "), *cert. denied,* 525 U.S. 1019, 119 S.Ct. 547, 142 L.Ed.2d 455 (1998). Leaving aside the fact that such a rationale for appellate jurisdiction would entirely eviscerate § 1447(d), given that the state court is left to decide the merits of the underlying dispute in every case that is remanded to it because of improper removal or lack of jurisdiction, *Minot* is simply inapplicable, for the remand order found reviewable in that case was not based on the absence of subject matter jurisdiction. Rather, *Minot* involved a remand based on abstention. *See* 13 F.3d at 592 ("section 1447(d) d[id] not bar appellate review" because "the District Court invoked abstention doctrines, rather than a jurisdictional defect, to justify its remand").

The City's reliance on *In re CSX* for the proposition that the present remand order is appealable under § 1291 on the ground that the remands "would vest the state courts with final authority to determine the scope of a federal remedy" (City brief on appeal at 34), is no more apt, for in *In re CSX* too the remand was on a basis other than lack of jurisdiction. The statute on which the *In re CSX* plaintiff based his claim conferred concurrent state and federal jurisdiction; thus, the court of appeals noted that "the district court *could not* [have] rule[d] ... under §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1447(c) that it was without jurisdiction," 151 F.3d at 167 (emphasis added).

[7] Defendants also contend that the remand order here should be reviewable on the ground that the district court made a merits-based decision because, in exploring ATSSSA, it made a "final determination on the issue of the scope of the Act's liability cap under section 408(a)(1)." (Port Authority and WTC Properties reply brief on appeal at 15; see also City brief on appeal at 34 n.7.) We disagree. The district court did not undertake to decide any merits questions independently of its need to determine whether it had jurisdiction over plaintiffs' claims; it touched on the liability cap solely as part of its analysis of the extent of ATSSSA's preemptive effect, an essential step in the determination of whether it had subject matter jurisdiction. We have noted that when such determinations are needed in order to assess jurisdiction, they do not create an independent basis for appellate review of the remand order, see, e.g., Medisys, 337 F.3d at 122-23; Spielman, 332 F.3d at 129-30, and that in any event, they would not have preclusive effect in subsequent state-court proceedings, see Medisys, 337 F.3d at 124.

*14 [8] Finally, we find no merit in defendants' contention that we should entertain their appeals pursuant to § 1292(b). The City's reliance on In re TMI Litigation Cases Consolidated II, 940 F.2d 832 (3d Cir.1991) ( "TMI "), cert. denied, 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992), for the proposition that § 1292(b) "appeals have been permitted where the [remand] order raises significant, unsettled questions of federal jurisdiction even where the remand order is based on an assessment of subject matter jurisdiction" (City brief on appeal at 33) mischaracterizes that case and misapprehends the law. The decision of the district court in TMI was not based on any normal "assessment of subject matter jurisdiction" (id.); and what the Third Circuit in TMI described as "unsettled" was not a jurisdictional question but rather a "constitutional" question, TMI, 940 F.2d at 848. The statute at issue in TMI clearly conferred subject matter jurisdiction, and the district court did not rule to the contrary. Rather, the district court based the remand on its ruling that the statute-- which was intended to (and did) confer federal jurisdiction--was beyond Congress's power and hence was unconstitutional. Thus, the court of appeals in TMI stated that

> the subject matter jurisdictional inquiry contemplated by section 1447(c) is limited to the question of whether Congress intended that the

> types of actions at issue be subject to removal. The question before us is not whether Congress intended that [these] actions be subject to removal but whether the Constitution requires that the clear removal provisions ... be invalidated.

940 F.2d at 846 (emphasis added). The TMI court stated that it had granted permission to appeal pursuant to § 1292(b) "[b]ecause [it was] convinced that the bar of section 1447(d) was not intended to preclude appellate consideration of a section 1292(b) certified question concerning the constitutionality of an Act of Congress." 940 F.2d at 836. The Third Circuit has subsequently emphasized that it views its TMI decision on the availability of § 1292(b) review as limited to remands premised on a federal statute's unconstitutionality and as leaving undisturbed the principle that "a routine jurisdictional inquiry into the satisfaction of the removal requirements" is unreviewable. Feidt, 153 F.3d at 129 n .5.

In the present case, there was no constitutional issue, and we see no support in TMI, or any other case, for the City's contention that a jurisdiction-based remand is reviewable on the basis that it involved novel or important jurisdictional questions. Given the Supreme Court's interpretation of § 1447(d) as barring review even where the remand "order might be deemed erroneous" by an appellate court," Thermtron, 423 U.S. at 351 (emphasis added), review is barred a fortiori where the order raises questions that are merely "significant" or "unsettled."

Nor is there any merit in the City's reliance on the proposition that "[t]wo local district courts, identifying a need for review of important, unsettled questions of federal jurisdiction, determined that section 1447(d) did not bar review where the remand order met the requirements for certification under 28 U.S.C. § 1292(b)" (City brief on appeal at 33 (emphases added) (citing Bank of New York v. Bank of America, 861 F.Supp. 225, 233 (S.D.N.Y.1994), and Ryan v. Dow Chemical Co., 781 F.Supp. 934, 952-53 (E.D.N.Y.1992))). We note in passing that although the district courts in those cases granted § 1292(b) certifications and suggested that that section might provide an avenue for review, in neither case did the district court purport to "determine" that § 1447(d) did not bar an appeal pursuant to § 1292(b); nor would such a district-court "determin[ation]" as to appellate jurisdiction have been binding on this Court. More importantly, certification by the district court, while an essential prerequisite to an appeal under § 1292(b), is, by the terms of that section, not sufficient. A party must also obtain permission to appeal from the court of appeals, see 28 U.S.C. §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1292(b), and in neither of those cases did we grant permission to appeal. In one, the attempted appeal was withdrawn by the parties. *See Bank of New York v. Bank of America*, No. 94- 7650 (2d Cir. July 7, 1994) (dismissing appeal with prejudice pursuant to Fed. R.App. P. 42). And in the other, as discussed earlier, we denied leave to appeal. *See Ryan v. Dow Chemical Co.*, No. 92-8008 (2d Cir. May 8, 1992).

**\*15 [9]** The City's characterization of our denial of leave to appeal in *Ryan* as "inapposite" on the ground that "th[is] Court granted certification [*sic* ] of the remand order at issue here" (City reply brief on appeal at 14 n.2)--and by this Court's "certification" we assume the City refers to our grant of permission to appeal--is doubly flawed. First, our order granting defendants permission to appeal here was plainly not unconditional; it stated that "the question of whether these remand orders are appealable at all" was a question that the motions panel "leave[s] to the merits panel," which would hear the plaintiffs' cross-appeals. *In re WTC Disaster Site*, Nos. 03-8023, etc. (2d Cir. Nov. 12, 2003). Second, even if the motions panel had not made clear that its grant of permission for defendants to appeal was provisional, such a grant would nonetheless be subject to review by the merits panel and to vacatur if permission had been granted improvidently. *See, e.g., Feidt*, 153 F.3d at 130 ("a motions panel['s] granting leave to appeal should not bar a merits panel from examining this court's jurisdiction"); *cf. United States v. Ecker*, 232 F.3d 348, 349 (2d Cir.2000) (motions panel's grant of reinstatement of appeal does not bar the merits panel from reviewing whether the Court has appellate jurisdiction); *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir.1999) (motions panel's denial of motion to dismiss for lack of appellate jurisdiction does not bar reconsideration of that issue), *cert. denied*, 528 U.S. 1189, 120 S.Ct. 1243, 146 L.Ed.2d 101 (2000).

We have considered all of defendants' arguments in support of appellate jurisdiction over their appeals and have found them to be without merit. The district court having ordered remands based on its ruling that it lacks subject matter jurisdiction in the cases to be remanded, its remand order is made unreviewable by § 1447(d). Accordingly, we dismiss defendants' appeals.

### III. THE CROSS-APPEALS: THE MERITS

On the cross-appeals, plaintiffs-appellees-cross-appellants ("cross-appellants") contend that the district court erred in refusing to remand their actions to state court. They contend, *inter alia*, that the

district court's distinction between injuries suffered on or before September 29, 2001, and those suffered after that date "bears no relation to anything Congress reasonably intended" in enacting ATSSSA (Cross-Appellants' brief on appeal at 59); that "ATSSSA was intended to encompass [only] the *immediate victims* of the terrorist attacks with a *direct connection* to the events of September 11, 2001" (*id.* at 17 (internal quotation marks omitted) (emphases in original)); and that, therefore, the court erred in ruling that their claims were preempted by ATSSSA. For the reasons that follow, we agree that the September 29 line of demarcation was not warranted, but we conclude that claims relating to respiratory injuries suffered in the massive demolition and debris-removal operation required as a result of the terrorist-related aircraft crashes of September 11 are preempted and should not be remanded.

#### A. *Principles of Preemption*

**\*16 [10][11]** The question of whether federal law preempts state law is fundamentally a matter of Congress's intent. *See, e.g., English v. General Electric Co.*, 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Since the existence of preemption turns on Congress's intent, we are to "begin as we do in any exercise of statutory construction[,] with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("*Travelers* "); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

**[12][13][14][15]** It is well established that state law is preempted under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, in any of several circumstances. First, when acting within constitutional limits, Congress is empowered to preempt state law by so stating in express terms. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Preemption of a whole field also will be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Ibid.; see Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, supra, at 67. See generally Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698-699, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

Hillsborough County, 471 U.S. at 713.

[16][17][18] "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) ("Easterwood"). Where the language of the statute plainly indicates that Congress intended preemption, "[w]e must give effect to th[e] plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning," Shaw, 463 U.S. at 97. If the text of the statute is ambiguous, either as to Congress's intent to preempt at all or as to the extent of an intended preemption, the meaning of the statute may be gleaned from its context and from the statutory scheme as a whole, or by resort to the normal canons of construction and legislative history. See id. at 100 (finding that federal statute preempted state law based on the statute's "plain language ..., [its] structure ..., and its legislative history"); see generally K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988); Canada Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG, 335 F.3d 52, 57 (2d Cir.2003) ("Canada Life"); Auburn Housing Authority v. Martinez, 277 F.3d 138, 143-44 (2d Cir.2002).

*17 [19][20][21] "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in

reality based on federal law." Beneficial National Bank v. Anderson, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); see, e.g., Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 63-66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ( "Metropolitan "). Thus, although "[f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit," and as such does not authorize removal, id . at 63, "complete[ ]" preemption warrants removal because claims within the preempted area are "necessarily federal in character," id. at 63-64. See, e.g., Spielman, 332 F.3d at 123 n. 5 (Newman, J., concurring) ("Complete preemption permits removal of a lawsuit to federal court based upon the concept that where there is complete preemption, only a federal claim exists."). Where "Congress has clearly manifested an intent to make causes of action ... removable to federal court," the federal courts must honor that intent. Metropolitan, 481 U.S. at 66.

B. The Terms and Preemptive Effect of ATSSSA

Congress enacted the original version of ATSSSA within days after the September 11 attacks. The principal components of the original enactment were the creation of the Victim Compensation Fund to provide relief, without litigation, to individuals (or relatives of deceased individuals) physically injured or killed as a result of the September 11 aircraft crashes, see ATSSSA § § 403, 405; the limitation of the airlines' liability for damages sustained as a result of those crashes, see id. § 408(a); the creation of a federal cause of action as the exclusive judicial remedy for damages arising out of those crashes, see id. § 408(b)(1); and the concentration in federal court in the Southern District of New York (or "Southern District") of suits on that federal cause of action, see id. § 408(b)(3). Some two months after its initial passage, ATSSSA was amended by the Aviation and Transportation Security Act, Pub.L. No. 107-71, 115 Stat. 597 (Nov. 19, 2001), to extend the liability limitation to, inter alios, the City of New York and entities having property interests in the World Trade Center.

Section 405 of the Act set out the criteria for individual claimants' recovery from the Fund as follows:

(c) ELIGIBILITY.--
(1) IN GENERAL.--A claimant shall be determined to be an eligible individual for purposes of this subsection if the Special Master determines that such claimant--
(A) is an individual described in paragraph (2); and
(B) meets the requirements of paragraph (3).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) INDIVIDUALS.--A claimant is an individual described in this paragraph if the claimant is--
(A) an individual who--
(i) *was present at* the World Trade Center, (New York, New York), the Pentagon (Arlington, Virginia), or the site of the aircraft crash at Shanksville, Pennsylvania *at the time, or in the immediate aftermath,* of the terrorist-related aircraft crashes of September 11, 2001; and
*18 (ii) *suffered physical harm or death as a result of such an air crash;*
(B) an individual who was a member of the flight crew or a passenger on American Airlines flight 11 or 77 or United Airlines flight 93 or 175, except that an individual identified by the Attorney General to have been a participant or conspirator in the terrorist-related aircraft crashes of September 11, 2001, or a representative of such individual shall not be eligible to receive compensation under this title; or
(C) in the case of a decedent who is an individual described in subparagraph (A) or (B), the personal representative of the decedent who files a claim on behalf of the decedent.
(3) REQUIREMENTS.--
(A) SINGLE CLAIM.--Not more than one claim may be submitted under this title by an individual or on behalf of a deceased individual.
(B) LIMITATION ON CIVIL ACTION.--
(i) IN GENERAL.-Upon the submission of a claim under this title, the claimant waives the right to file a civil action (or to be a party to an action) in any Federal or State court for *damages sustained as a result of* the terrorist-related aircraft crashes of September 11, 2001. The preceding sentence does not apply to a civil action to recover collateral source obligations.
(ii) PENDING ACTIONS.—In the case of an individual who is a party to a civil action described in clause (i), such individual may not submit a claim under this title unless such individual withdraws from such action by the date that is 90 days after the date on which regulations are promulgated under section 407.
ATSSSA § 405(c) (emphases added); *see also id.* § 402(4) (defining "collateral source" to mean "all collateral sources, including life insurance, pension funds, death benefit programs, and payments by Federal, State, or local governments related to the terrorist-related aircraft crashes of September 11, 2001").

As amended in November 2001, § 408 reads in pertinent part as follows:

LIMITATION ON LIABILITY
(a) IN GENERAL.--
(1) LIABILITY LIMITED TO INSURANCE COVERAGE.--Notwithstanding any other provision of law, liability for all claims, whether for compensatory or punitive damages or for contribution or indemnity, arising from the terrorist-related aircraft crashes of September 11, 2001, *against* an air carrier, aircraft manufacturer, airport sponsor, or *person with a property interest in the World Trade Center,* on September 11, 2001, whether fee simple, leasehold or easement, direct or indirect, or their directors, officers, employees, or agents, shall not be in an amount greater than the limits of liability insurance coverage maintained by that air carrier, aircraft manufacturer, airport sponsor, or person.
....
(3) LIMITATIONS ON LIABILITY FOR NEW YORK CITY.--Liability for all claims, whether for compensatory or punitive damages or for contribution or indemnity *arising from the terrorist-related aircraft crashes of September 11, 2001, against the City of New York* shall not exceed the greater of the city's insurance coverage or $350,000.000. If a claimant who is eligible to seek compensation under section 405 of this Act, submits a claim under section 405, the claimant waives the right to file a civil action (or to be a party to an action) in any Federal or State court for *damages sustained as a result of* the terrorist-related aircraft crashes of September 11, 2001, including any such action against the City of New York. The preceding sentence does not apply to a civil action to recover collateral source obligations.
*19 (b) FEDERAL CAUSE OF ACTION.--
(1) AVAILABILITY OF ACTION.--*There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes* of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001. Notwithstanding section 40120(c) of title 49, United States Code, *this cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights.*
(2) SUBSTANTIVE LAW.--The substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law.
(3) JURISDICTION.--The United States District Court for the Southern District of New York shall have *original and exclusive jurisdiction over all actions brought for any claim* (including any claim for loss of property, personal injury, or death)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001.
ATSSSA § 408 (as amended) (emphases added).

[22] Construing the express language of the Act, we think it clear beyond peradventure that some preemption was intended. Viewing the language, considering the statute as a whole and the differences between its relevant parts, and taking into account the statute's purpose and legislative history, we conclude that Congress intended ATSSSA to preempt at least the claims brought by the plaintiffs in the 35 cases dealt with in the district court's opinion.

First, it is clear from § 408's provisions that "[t]here shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes" and that "this cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights," ATSSSA § 408(b)(1) (emphases added), that Congress intended to preempt all state-law claims for damages arising out of the hijackings and the subsequent crashes. Thus, although state law would provide a cause of action in the absence of contrary federal law, the provisions in § 408(b)(1) establishing an exclusive federal remedy undeniably bespeak an intent to displace state-law remedies entirely for such damages claims.

Second, it is clear from the additional provision in § 408 that the federal district court in the Southern District "shall have ... exclusive jurisdiction over all actions brought for any claim ... resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001," id. § 408(b)(3) (emphases added), that Congress intended that all suits asserting the ATSSSA-created cause of action be litigated only in that federal court. To give effect to that intent where such an action has been commenced in state court, this provision must be interpreted as authorizing the removal of the action to the federal court.

Fathoming the extent of the intended preemption, however, requires a focus beyond the precise language of § 408, for the respective reaches of terms such as "arising out of," "resulting from," and "relating to" are not self-evident. When § 408 is compared against § 405, which defines eligibility to receive compensation from the Victim Compensation Fund, it is evident that § 408 is broader in two significant respects. First, as detailed above, § 405 sets exacting criteria with respect to the times and places of injury, stating that to be eligible for an award from the Fund, the applicant must, inter alia, be an individual (or represent a deceased individual) who was on one of the four hijacked airplanes, see ATSSSA § 405(c)(2)(B), or who "was present at the World Trade Center, (New York, New York), the Pentagon (Arlington, Virginia), or the site of the aircraft crash at Shanksville, Pennsylvania, at the time, or in the immediate aftermath, of the terrorist-related aircraft crashes of September 11, 2001," id. § 405(c)(2)(A)(i) (emphases added). Thus, § 405 is specific as to place of injury, i.e., one of the three crash sites, and as to timing, i.e., the time of or the immediate aftermath of the September 11 crashes. Section 408, in creating the federal cause of action, superseding state-law remedies, and giving the federal court exclusive jurisdiction, imposes no such criteria. It makes no mention of any particular timing or situs of an alleged injury; and it contains no language cross-referencing § 405. Thus, although the district court interpreted the Act and its legislative history as showing "that the interest of Congress was focused on claims of those immediately involved in the terrorist-related aircraft crashes and the tasks following in their immediate aftermath," 270 F.Supp.2d at 378, that narrower focus appears solely in § 405, which deals only with compensation available from the Victim Compensation Fund, not in § 408. The provisions of § 408 give no indication that Congress intended preemption to be limited to claims with respect to persons who were on the hijacked airplanes or who were present at one of the crash sites at the time of the crashes or immediately thereafter.

*20 Second, the phrases used in § 405 and 408 are significantly different in describing the required relationship between the September 11 events and the claims that are the subjects of those sections. Section 405, with respect to a person who was present at a crash site at the time of the crash or in its immediate aftermath, allows recovery from the Fund for damages sustained "as a result of " the crash. ATSSSA § 405(c)(2)(A)(ii). Section 408 uses two broader concepts: (1) It creates a federal cause of action for damages "arising out of" the crashes, id. § 408(b)(1), which encompasses a broader group of claims than does the phrase "as a result of" the crashes; and (2) while § 405's "as a result of" concept is repeated--as "resulting from"--in the § 408 subsection that gives the federal court exclusive jurisdiction, § 408's operative phrase is "resulting from or relating to " the crashes, id. § 408(b)(3) (emphasis added), and a phrase such as "relat[ing] to" is "clearly expansive," Travelers, 514 U.S. at 655. Accordingly, we conclude that whereas § 405 relief

2005 WL 1649041                                                    Page 18
--- F.3d ---
(Cite as: 2005 WL 1649041 (2nd Cir.(N.Y.)))

is limited to injuries suffered "as a result of" the air crashes, the scope of § 408, dealing with "all actions brought for *any* claim ... resulting from *or relating to* " the crashes (emphasis added), is clearly broader.

Yet, the fact that ATSSSA's phrase "relating to" is, both inherently and evidently intentionally, more expansive than merely "resulting from" does not inform us of the extent of its breadth. With respect to Congress's use of the "relat[ing] to" concept in its preemption of state laws insofar as they "relate to" ERISA plans, the Supreme Court has noted that a state law may be said to " 'relate[ ] to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan," *Shaw,* 463 U.S. at 96-97; however, the Court has also stated that, in the cosmological sense, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for '[r]eally, universally, relations stop nowhere,' H. James, Roderick Hudson xli (New York ed., World's Classics 1980)," *Travelers,* 514 U.S. at 655. Thus, a phrase such as "relat[ing] to," though "clearly expansive," *id.,* is not a self-evident guide to the precise extent of Congress's preemptive intent.

Accordingly, we turn to ATSSSA's purposes and legislative history. The legislative history is understandably sparse, given the swiftness with which Congress acted after the events of September 11; there apparently were no committee reports prior to ATSSSA's initial passage, and only a conference committee report prior to the Act's amendment. Nonetheless, the statements during debate on the legislation made clear that Congress's principal goals were to provide relief without litigation to individuals harmed as a result of the crashes and to limit the liability of entities that were likely to be sued for injuries suffered in connection with the crashes. *See, e.g.,* 147 Cong. Rec. S9594 (Sept. 21, 2001) (statement of Sen. McCain). Even Congressmen who decried the speed with which the legislation was passed accepted that those were its principal purposes. *See, e.g.,* 147 Cong. Rec. H5914 (Sept. 21, 2001) (statement of Rep. Conyers).

*21 Although we are aware of no statements in the legislative history expressly addressing the scope of the provision establishing the ATSSSA federal cause of action as a litigant's exclusive remedy, there is ample evidence that Congress intended all such causes of action to be adjudicated in a single federal forum. For example, Senator Schumer stated:

It may be a little unclear to some whether *all*

*lawsuits* or just lawsuits against the airlines will be situated in the Southern District of New York. *The intent here is to put all civil suits arising from the tragic events of September 11 in the Southern District.*
147 Cong. Rec. S9592 (Sept. 21, 2001) (emphases added). Similarly, Senator McCain stated that "the bill attempts to provide some sense to the litigation by *consolidating all civil litigation arising from the terrorist attacks of September 11 in one court.*" 147 Cong. Rec. S9594 (Sept. 21, 2001) (emphasis added). And Senator Hatch stated: "For those who seek to pursue the litigation route, I am pleased that *we consolidated the causes of action in one Federal court* so that there will be some consistency in the judgments awarded." 147 Cong. Rec. S9595 (Sept. 21, 2001) (emphasis added).

While these statements are addressed most directly to the conferral of exclusive jurisdiction on the federal court, the common theme of references to "all lawsuits," "all civil litigation," and "all civil suits," along with the expansive phrase "relating to"--all of which contrast with the narrow focus of § 405-- strongly suggests that Congress meant the ATSSSA-created cause of action to preempt more than just the claims of persons who were on the hijacked planes or present at or in the immediate aftermath of the crashes, and more than just claims that arose during the formal search for survivors.

As it requires no great stretch to view claims of injuries from inhalation of air rendered toxic by the fires, smoke, and pulverized debris caused by the terrorist-related aircraft crashes of September 11 as claims "relating to" and "arising out of" those crashes, we conclude that Congress intended ATSSSA's cause of action to be sufficiently expansive to cover claims of respiratory injuries by workers in sifting, removing, transporting, or disposing of that debris.

Finally, we note that in the limited legislative history with regard to the November 2001 amendments that extended ATSSSA's liability-limiting provisions to the City and others, Representative Sensenbrenner, Chairman of the House of Representatives Committee on the Judiciary, repeatedly stated that the purpose of those amendments was "to protect ... the city[ ] and the Port Authority from lawsuits," 147 Cong. Rec. H7658-59 (November 1, 2001); *see, e.g., id.* at H7649 (to "prevent the prospect of unlimited liability damage awards from turning New York from the nation's financial capital into a business graveyard"). In giving the City and entities with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

property interests in the World Trade Center--which include the Port Authority and WTC Properties--protection from debilitating lawsuits, Congress used in the amended § 408(a) the core language it had used in § 408(b)(1) to describe the ATSSSA-created federal cause of action, *i.e.*, claims for "damages ... arising from the terrorist-related aircraft crashes of September 11, 2001." ATSSSA § § 408(a)(1) and (3). By adding the City and the property owners to those whose liability for damages arising out of the September 11 attacks was to be limited, and using the same language it had used in the preemptive provisions in § 408(b)-- which were not amended-- Congress signified its intent that state-law remedies for such claims against the City, the Port Authority, and WTC Properties were to be preempted.

**22 Cross-appellants argue that we should find their claims of respiratory injuries not preempted because in *Canada Life*, 335 F.3d 52, we stated that more than "but for" causation was needed to bring claims within the scope of ATSSSA's jurisdictional provisions. We are unpersuaded. In *Canada Life*, we were confronted with the question of whether ATSSSA gave the federal court jurisdiction of a contract dispute between foreign reinsurers with respect to liabilities that resulted from the terrorist attacks of September 11, 2001. We noted that "[t]he purpose of Section 408(b)(3) ... was to ensure consistency and efficiency in resolving the many expected actions arising from the events of September 11." *Id.* at 58.

Requiring a single forum for "all actions brought for any claim ... resulting from or relating to" the events of September 11 must have as its goal the avoidance of the undesirable effects that litigation of September 11 claims in the various state and federal courts would inevitably produce. These effects might include: inconsistent or varying adjudications of actions based on the same sets of facts; adjudications having a preclusive effect on non-parties or substantially impairing or impeding non-parties' abilities to protect their rights; victims or their survivors without any possibility of recovery when the limits of liability have been exhausted in other lawsuits; the difficulties in mediation when defendants are sued in multiple state and federal courts, and the waste of private and judicial resources in multiple state and federal courts hearing cases involving the same factual and legal issues.

*Id.* at 59. We observed that, although the dispute between the reinsurers would not have arisen "but for" the events of September 11, that dispute would not require "adjudication of any issue of law or fact that concerns the events of September 11," *id.* at 57,

and we held that there was no reason to infer that Congress had intended that dispute to be encompassed by ATSSSA's jurisdictional provision.

In the present cases, in contrast, the relationship between the September 11 crashes and the plaintiffs' claims is considerably more extensive than simple "but for" causation. Here, the court will be required to explore such common factors as the immediate need to conduct and continue searches for survivors without regard to the availability of respirators; the continuing need to sift for human remains; the unprecedented quantity of the debris; the ever-present need for engineering evaluation of the structural safety of remaining walls and foundations; and the character of the crash site as a crime scene, creating security concerns and affecting the manner in which the demolition and debris-removal operations were conducted and the manner in which the debris was treated both at that site and at marine transfer points and the landfill. The court will confront such individual factors as the degree to which each plaintiff was exposed to toxic substances. Thus, the factors cited in the *Canada Life* passage quoted above suggest that claims such as those at issue in the present cases are precisely the type of claims that Congress intended to preempt.

**23 The district judge, in his ruling that Congress had intended to preempt only some of the present claims but "was not clear ... as to the scope of protection that it intended to give to the City," 270 F.Supp.2d at 371, made note of a November 1, 2001 letter sent by then-Mayor Giuliani to members of the New York congressional delegation ("Giuliani Letter") urging adoption of amendments that would limit the City's liability. The court observed that the Mayor's letter stated that the proposed amendment would alleviate only " 'part" ' of " 'the City's potential liability exposure," ' and "that 'the City's urgent need for indemnification in removing debris from the World Trade Center site is not part of this legislation." ' 270 F.Supp.2d at 371-72 (quoting Giuliani Letter at 1). The pertinent section of that letter stated as follows:

I write to offer my support of H.R. 3150 (Secure Transportation for America Act), which is currently being considered before the Congress. The measure that Chairman Young will bring to the floor will contain a managers amendment that would provide New York with much needed relief from potential liability arising out of the attacks on the World Trade Center on September 11, 2001. Any substitute would fail to provide the City the fiscal protection it needs from potentially limitless

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1649041
--- F.3d ---
(Cite as: 2005 WL 1649041 (2nd Cir.(N.Y.)))

lawsuits.
The managers amendment would help New York tremendously by limiting the recovery of damages arising out of the hijackings and subsequent crashes to the amount of insurance that a defendant had prior to September 11th. Passage of Chairman Young's bill *would solve one large part of the City's potential liability exposure,* and help ensure steady progress toward utilizing our resources to address critical fiscal matters. Although *the City's urgent need for indemnification in removing debris from the World Trade Center site is not part of this legislation, H.R. 3150 does grant us tremendously important legal coverage.*

(Giuliani Letter at 1 (emphases added).) We cannot see that this letter sheds any light on the preemption question at issue here. The letter makes no reference to claims of respiratory injury; its reference to "part" of the potential liability exposure does not reveal any suggestion of a parsing along temporal or geographical lines; and we see no basis for inferring that the word "indemnification" was used in any sense other than reimbursement, especially as the sentence in which it appears seems to be contrasting indemnification with "legal coverage." Most importantly, we see nothing in the legislative history to create an inference that Congress itself did not intend the provisions in ATSSSA--either the cause-of-action and jurisdictional provisions or the amended provision expanding the entities benefited by the liability cap--to be broad enough to encompass the present claims for respiratory injuries.

[23] We agree with the district court that Congress did not intend to displace the entire panoply of state law "regulat[ing] the health and safety of the workplace," *270 F.Supp.2d at 378.* But we disagree with its conclusion that ATSSSA's encompassing all of the respiratory injury claims in the present cases would have that effect. The ATSSSA-created cause of action has little apparent application to the ordinary workplace--even a workplace concerned with construction and demolition; it supersedes state-law claims only with respect to damages remedies for injuries arising out of or relating to the terrorist-related aircraft crashes of September 11. Further, as to those September 11- related claims, ATSSSA requires that "[t]he substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." ATSSSA § 408(b)(2). What ATSSSA itself displaces is not the substantive standards governing liability, but only the state-law damages remedies. And as to such remedies, Congress's intent to preempt is manifest.

*24 Finally, we are constrained to note that we see no basis for the district court's ruling that ATSSSA's preemptive effect differs depending on whether the respiratory injuries were suffered at the World Trade Center site or elsewhere, or on whether those injuries were suffered before or after midnight on September 29. Nothing in the language of the statute or the legislative history suggests such lines of demarcation. The district court's geographical line would mean that, as to a given pile of debris that gave off toxic fumes both at the World Trade Center site and at a marine transfer station or the landfill to which it was transported, the claim of a worker who inhaled those fumes at the World Trade Center site would be preempted, while the claim of a worker who inhaled fumes from the same debris at either of the other sites would not. And given that it was December or later before all of the fires caused by the crashes were extinguished, the district court's cutoff date would mean that ATSSSA preempts the claim of a worker who inhaled smoke from a fire on September 29 but not the claim of a worker who inhaled smoke one day later from the same fire. We cannot conclude that Congress intended such differences.

In sum, in making the ATSSSA-created federal cause of action the exclusive remedy for damages arising out of the September 11 plane crashes, Congress clearly expressed its intent to preempt state-law remedies for damages claims arising out of those crashes. In conferring on the federal district court in the Southern District of New York "original and exclusive" jurisdiction of the federal cause of action, Congress clearly evinced its intent that any actions on such claims initiated in state court would be removable to that federal court.

No doubt there will be some claims whose relationship to the terrorist-related aircraft crashes of September 11, 2001, is "too tenuous, remote, or peripheral," *Travelers, 514 U.S. at 661* (internal quotation marks omitted), to warrant a finding that those claims "relat[e] to" those crashes; but we make no attempt to draw a definitive line here. We need not take the phrase "relating to" to any metaphysical extreme in order to conclude that it encompasses the claims brought before the district court here, *i.e.,* that airborne toxins and other contaminants emanating from the debris created by the crashes caused respiratory injuries to plaintiffs employed to sift, remove, transport, or dispose of that debris.

IV. PROCEEDINGS ON REMAND

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1649041
--- F.3d ---
(Cite as: 2005 WL 1649041 (2nd Cir.(N.Y.)))

Page 21

For the reasons stated in Part III above, we affirm so much of the district court's order as denied cross-appellants' motions to remand their actions to state court. In the course of approving that part of the order, we have noted our agreement with cross-appellants' contention that there was no appropriate basis for the district court's conclusion that their claims should be retained while those of plaintiffs who asserted claims of respiratory injury suffered at sites other than the World Trade Center site or after September 29, 2001, were to be remanded.

*25 [24] The latter group of claims was the subject of defendants' appeals, of which we lack jurisdiction for the reasons stated in Part II above. However, we note that the district court stayed its remand orders pending appeal. Where the remand order has not been implemented and the case has not actually been returned to the state court, the district court has the authority, as with any interlocutory order, "to revis[e its order] at any time before the entry of final judgment," Fed.R.Civ.P. 54(b), and "to reconsider the remand to the state court in light of this [Court's] opinion," *Active Fire Sprinkler Corp. v. United States Postal Service, 811 F.2d 747, 758 (2d Cir.1987).* Given our view that the respiratory injury claims before the district court are preempted by ATSSSA and are claims over which the district court has exclusive jurisdiction, we invite the district court, in any such actions as remain pending before it, to reconsider so much of its decision as ordered remands to state court.

CONCLUSION

We have considered all of defendants' arguments in support of appealability and all of cross-appellants' arguments in support of reversal and have found those arguments to be without merit. On the cross-appeals, Docket Nos. 03- 7736, -7758, and -7760, so much of the district court's order as denied remands is affirmed. Defendants' appeals, bearing the remaining docket numbers, are dismissed for lack of appellate jurisdiction.

FN* The present caption in these consolidated appeals lists as "Plaintiffs-Appellees" (a) the plaintiffs specified by defendants Port Authority of New York and New Jersey and World Trade Center Properties LLC as the plaintiffs against whom those defendants are appealing, and (b) the plaintiffs listed in the captions of the notices of appeal filed by defendant City of New York without any such specification.

FN** Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

2005 WL 1649041 (2nd Cir.(N.Y.))

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.